IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Anthony L. Mann, <br><br> Plaintiff, <br><br> vs. <br><br> Sgt. M. Scott; Sgt. Kiesha Gibbs; Lt. Frank Richardson; Nurse Elouise Montgomery, <br><br> Defendants. | Civil Action No.: 0:14-3474-RMG <br><br> **ORDER** |

This matter is before the Court on the Report and Recommendation ("R&R) of the Magistrate Judge (Dkt. No. 65) recommending that this Court grant Defendants' motion for summary judgment. (Dkt. No. 29). The Court denies the motion for summary judgment for the reasons herein.

**Background**

In determining whether a genuine issue has been raised, sufficient to defeat a motion for summary judgment, the Court must construe the information found in the record in a light most favorable to the nonmoving party, in this case the defendant. *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996).

Plaintiff, Anthony Mann, filed this *pro se* action alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983 (Dkt. No. 1). Plaintiff alleges that on April 17, 2014,[1] prison employees conducted a sweep of his and other inmates' cells in the Lee Correctional Institution. Plaintiff alleges that after he and the other inmates discovered that certain of their possessions,

---

[1] The record at times contains references to an incident on April 14, 2014. However, it appears that this is an error and that there is only one instance of alleged unconstitutional action by the prison employees at issue, which occurred on April 17.

including items of personal hygiene and legal materials, were missing, they repeatedly requested to have them returned. The prisoners also "immediately began requesting to see and speak with Deputy Warden Willie Davis" (Dkt. No. 63 at 3). These requests were ignored. Mann alleges that after some of the inmates kicked their doors and shouted for assistance, Defendant Scott used excessive force when she sprayed Mann with chemical munitions, then turned off the water to Mann's cell to prevent him from decontaminating. He further alleges that Defendants Gibbs and Richardson refused to allow him to decontaminate and refused to give him dinner; and that Defendant Nurse Montgomery denied him medical treatment following the pepper spray incident. (Dkt. No. 65 at 1-2).

Plaintiff has submitted affidavits from four other inmates testifying that they saw the pepper spray incident. (Dkt. Nos. 63-4, 63-5, 63-6, 63-7). They all attest to essentially the same facts: that after a cell sweep a number of inmates were missing non-contraband materials, that they attempted to get a response to their complaints, that Officer Scott sprayed part or all of the contents of a chemical munitions can into Mann's cell, and that Mann's water was cut off in his cell until 10:30 am the next morning. The affiants further attested that Nurse Montgomery saw Mann briefly but did not give him medical treatment, and that Mann and his cell were not decontaminated. (*Id.*).

Plaintiff has averred that he "continuously wrote complaints in regards to the unprofessional actions of Ofc. Scott" and complained to Deputy Warden Davis "of the unprofessional actions of the Defendants and pushed to have them removed." He alleges that Officer Scott responded by jeopardizing Plaintiff's safety by telling other prisoners that he was a "snitch." (Dkt. No. 63 at 9). He further alleges that Officer Scott had him removed to a Supermax cell, and told him that he would have "a real nasty cell with no lights in it" where he

would be unable to file grievances and lawsuits. (*Id.* at 10). He alleges that the cell in which he was placed had no lights, exposed electrical wiring, food and feces splattered on the walls, and mold on the floor, walls, and shower. The shower, according to the Response for Summary Judgment, was turned off, depriving Plaintiff of a shower for two months. (*Id.*).

In accordance with 28 U.S.C. §636(b) and Local Civil Rule 73.02(B)(2) DSC, this matter was referred to a Magistrate Judge. Defendant filed a motion for summary judgment on January 27, 2015. (Dkt. No. 29). The Magistrate Judge issued the R&R on July 28, 2015 recommending that the complaint be dismissed for failure to exhaust administrative remedies. (Dkt. No. 65). Plaintiff filed objections on August 13, 2015 (Dkt. No. 67) and Defendants filed objections on August 14, 2015 (Dkt. No. 68).

## Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Matthews v. Weber*, 423 U.S. 261, 270-71 (1976). This Court is charged with making a *de novo* determination of those portions of the R&R to which specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.* As to portions of the R&R to which no specific objection is made, this Court "must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Id.* (quoting Fed. R. Civ. P. 72 advisory committee note).

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P.

3

56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "When determining whether the movant has met its burden, the court must assess the documentary materials submitted by the parties in the light most favorable to the nonmoving party." *Id.* The party seeking summary judgement shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the nonmoving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

A non-moving party's verified petition is deemed to be equivalent to an opposing affidavit for summary judgment purposes. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). Where resolution of a material issue of fact depends upon a credibility determination, disposition of the matter by summary judgment is not appropriate. *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979).

## Law/Analysis

### A. Exhaustion

In their motion for summary judgment, Defendants argue that Plaintiff has not exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e. (Dkt. No. 29-1 at 6). According to Defendants, "[a] prisoner

4

does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford [v. Ngo]*, 548 U.S. 81, 126 [(2006)]. Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies 'in accordance with the applicable procedural rules,' so that prisoner officials have been given an opportunity to address the claims administratively. *Id.*" (Dkt. No. 6). The parties here agree that there is a grievance procedure at LCI, which requires that prior to filing a grievance, he or she must attempt an informal resolution of the matter by filing a Request to Staff (RTS). *E.g.* Dkt. No. 1 ¶ 18. The prisoner must then attach a copy of an "answered Request to Staff form" in order to file a Step One Grievance, which is a prerequisite for filing a Step Two Grievance.

There is also no dispute that Plaintiff filed a grievance on or around April 18, 2014 (Number Lee C.I. 0472-14) and several additional grievances. However, Defendants explain that the grievances "have been either returned 'unprocessed' or are still pending . . . Specifically, Plaintiff's Step 1 Grievance, 0472-14, was returned 'unprocessed' because Plaintiff failed to comply with the Inmate Grievance Procedures. Martinez Aff. ¶¶ 6–7. Plaintiff admits that in order to file a proper Step 1 grievance, he needed to attempt an informal resolution of the matter through RTS Forms . . . Plaintiff chose not to re-file a grievance concerning the alleged incidents addressed in the Complaint. Martinez Aff. ¶ 8. (Dkt. No. 29-1 at 8)." CITE.

Plaintiff asserts, and Defendants do not dispute, that he filed *many* RTS's and never received a response that he could have attached to his grievance in order for the prison to process it. He has submitted copies of six RTS's, which he directed to Deputy Warden Willie Davis, General Counsel David Tatarsky, Ms. Hallman, and Ms. Rivers. In the RTS's, he also references a number of prior RTS's. Adding to the confusion of the record, at least two of the RTS's are

stamped "ISSUE ALREADY ADDRESSED," (Dkt. Nos. 63-30; 63-32) and at least two were datestamped incorrectly by the prison (*e.g.* Dkt. No. 63-32, dated May 3, stamped received March 14, and stating "On April 17, 2014, I was viciously assaulted...")

In one RTS dated in May, Plaintiff stated that "I also submitted a grievance on the issue (Lee CI 0472-14) and it was returned from the DOI telling me I have to have a responded to RTSM form to go with it. How can I do that if no one will respond to my RTSM's?" It appears that no one did respond to this question, as there is no response to the RTS in the record; however, this RTS is also stamped "ISSUE ALREADY ADDRESSED." (Dkt. No. 63-32). In a June RTS, Plaintiff wrote to the Institutional Grievance Counselor, Ms. Rivers, that "This is the 3rd RTSM I've written you in regards to the incident. If you will respond to this saying that I brought this to your attention I will be out of your hair." At the bottom of the form, Ms. Rivers wrote in the "disposition" section on July 2, 2014: "I apologize – I thought I had answered all of your requests . . . I cannot use a RTS unless it is answered by appropriate staff – DW Davis or Capt. [illegible] will have to answer a RTS concerning Ofc. Scott's alleged assault on you." (Dkt. No. 63-33).

Upon review of the record, Defendants' assertion that Plaintiff "chose" not to file a proper Step One Grievance is a clear misstatement of the facts, since Plaintiff could not have "chose[n]" to file paperwork that he did not have, despite his vigorous and voluminous attempts to elicit a proper response from the prison so that he could complete the administrative process. There is no suggestion in Defendants' filing that they were not "given an opportunity to address the claims administratively" as required by law; on the contrary, prison staff were presented with tenacious and repetitious complaint forms. It is unclear what more Plaintiff could have done to

pursue his claims, or whether additional paperwork would have been of any benefit to the prisoner or the prison administration.

Prison officials may not take unfair advantage of the exhaustion requirement, and a remedy becomes "unavailable" if prison employees do not respond to a properly filed grievance, or if they otherwise act to prevent a prisoner from exhausting his administrative remedies. *See Moore v. Bennett,* 517 F.3d 717, 725 (4th Cir. 2008). Thus, a court may excuse a prisoner's failure to exhaust an administrative remedy if a prisoner "through no fault of his own, was prevented from availing himself of" the remedy. *Id.* The burden of showing that administrative remedies were unavailable lies with the plaintiff. *See, e.g., Graham v. Gentry,* 413 F. App'x 660, 663 (4th Cir.2011) ("[I]n order to show that a grievance procedure was not 'available,' a prisoner must adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure.") (citing *Moore,* 517 F.3d at 725). The "exhaustion of administrative remedies under the PLRA is a question of law to be determined by the judge." *Drippe v. Tobelinski,* 604 F.3d 778, 782 (3d Cir. 2010); *see also Messa v. Goord,* 652 F.3d 305, 308 (2d Cir. 2011); *Dillon v. Rogers,* 596 F.3d 260, 272 (5th Cir. 2010). District courts are "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials" before dismissing a claim for failure to exhaust. *Aquilar–Avellaveda v. Terrell,* 478 F.3d 1223, 1225 (10th Cir. 2007). Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy "unavailable" and a court will excuse the prisoner's failure to exhaust. *See Lyon v. Vande Krol,* 305 F.3d 806, 808 (8th Cir. 2002) (en banc); *Little v. Jones,* 607 F.3d 1245, 1250 (10th Cir. 2010).

7

The problem here is twofold: First, SCDC's administrative process bars prisoners from filing Step One grievances without an attached, *responded-to* RTS. (Aff. of David Martinez, Inmate Grievance Administrator, Dkt. No. 29-16 at 1, citing GA-01.12). Second, it bars prisoners from filing a grievance on the basis that a Step One grievance was left unprocessed. GA-91.12, § 8.5.1-8.5.3 (disallowing grievances based on unprocessed grievances or based on the disposition of another grievance).[2] The policy, in other words, predicates a prisoner's ability to appropriately grieve and appeal an issue upon the prison's own action, which does not offer him a meaningful opportunity to exhaust. An inmate who has not received a response to an RTS may abide by the GA-01.12 requirements and wait patiently for the response that may never come, thereby losing the opportunity to fully exhaust the final steps of his administrative remedies as the PLRA requires. Or, he may ignore repeated directives from the prison that he may *not* proceed to filing a Step One and Step Two grievance, file them despite having received no response on his RTS, and fall afoul of the Supreme Court's more specific requirement that he "follow the required steps" of the administrative procedure. *Woodford*, 548 U.S. at 126.

The Court finds that the prison's failure to respond to Plaintiff's RTS's made an administrative remedy unavailable in this case, excusing his resulting failure to exhaust prior to filing suit. The Motion for Summary Judgment is denied as to its administrative exhaustion grounds and the Court proceeds to the merits of the case.

### B. Excessive Force Claim

In a claim for excessive application of force, a prisoner must meet a heavy burden to satisfy the subjective component—that prison officials applied force "maliciously and

---

[2] Plaintiff has also submitted a memo addressed to him, dated September 8, 2014, from IGC Karen Rivers, stating that "As of this time, we cannot honor SMU Requests to Staff as inmates in SMU cannot keep copies of their Request to Staff." (Dkt. No. 63-41). It is unclear what process she was referring to as "honoring" SMU RTS's, but her statement also indicates that the grievance procedure as written was unavailable to Plaintiff.

sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline . . . [S]uch factors as the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted, are relevant to that ultimate determination. From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986) (internal quotation marks omitted).

Use of chemical munitions on prisoners may or may not constitute excessive force, and the *Whitley* factors depend on the circumstances surrounding the application of the chemical munitions and any treatment and decontamination following. *See Williams v. Benjamin*, 77 F.3d 756, 762 (4th Cir. 1996) (use of pepper spray justifiable under first *Whitley* factor where Plaintiff "refused to obey the command" to stop throwing water); *cf. Tedder v. Johnson*, 527 F. App'x 269, 272-73 (4th Cir. 2013) (overturning grant of summary judgment where, among other things, there was a dispute of fact as to whether Plaintiff was willing to comply with Defendant's commands at the time mace was used). *See Williams*, 77 F.3d at 763 ("[I]t is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain."); *cf. Iko v. Shreve*, 535 F.3d 225, 240 (4th Cir. 2008) (affirming denial of summary judgment where Defendant "deployed several additional bursts of pepper spray even after [Plaintiff] attempted to comply with orders"). Under the Fourth *Whitley* factor, the Court notes that a "limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate." *Williams*, 77 F.3d at 763 (internal quotations omitted). "[B]ecause a ***limited*** use of

mace constitutes a relatively 'mild' response compared to other forms of force, the initial application of mace indicates a 'tempered' response by the prison officials." *Id.* (emphasis added).

Courts have found that the question of whether a prisoner was sufficiently decontaminated following the use of pepper spray or mace is "a significant factor in upholding the use of mace." *Williams*, 77 F.3d at 756 (citing *Soto v. Dickey*, 744 F.2d 1260, 1266 (7th Cir. 1984)); *see also Mann v. Faley*, 578 F. App'x 267, 273 (4th Cir. 2014) ("We have previously held that the denial of decontamination can give rise to an Eighth Amendment claim.")

Here, Plaintiff alleges that the water was shut off in his cell at the time of the pepper spray incident, and that he was therefore not able to decontaminate following his exposure at all. Defendant Nurse Montgomery has attested that Plaintiff "post the use of gas" on April 17, 2014, and was of the opinion that he was "not in any distress." (Dkt. No. 28-15). However, neither she nor the other defendants dispute Plaintiff's claim that he did not have access to water, that Nurse Montgomery did not give him water, and that the water was turned off in his cell until 10:30 am the following day. In addition, there is no information in the record to indicate how much time passed between the pepper spraying and Defendant Montgomery's exam.

In sum, it appears at this point uncontested that Defendant Scott used chemical munitions on Plaintiff, who was not able to decontaminate after the incident. He disputes Defendants' testimony and argument that he was not in sufficient pain to necessitate decontamination or other attention later, and submits affidavits of four other inmates swearing to his version of events. The Court therefore is constrained to find an issue of material fact remaining on the issue of excessive force. Summary Judgment is therefore denied as to this claim.

### C. Conditions of Confinement/First Amendment Retaliation Claim

10

Plaintiff alleges that in retaliation for his grievances, and/or in anticipation of legal action, Officer Scott had him removed to a Supermax cell, and told him that he would have "a real nasty cell with no lights in it" where he would be unable to file grievances and lawsuits. (Dkt. No. 63 at 10). He alleges that the cell in which he was placed had no lights, exposed electrical wiring, food and feces splattered on the walls, and mold on the floor, walls, and shower, which did not work, depriving him of a shower for two months. (*Id.*). This allegation appears to state a claim both for the physical conditions of the cell in which he was placed, and the alleged retaliatory motivation of Officer Scott in placing him there.

"The Constitution does not mandate comfortable prisons;" however, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan,* 511 U.S. 825, 832, (internal quotations and citations omitted). To state a claim that conditions of confinement violate constitutional requirements, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials. *De'lonta v. Angelone,* 330 F.3d 630, 634 (4th Cir.2003). To show a serious deprivation of a basic human need, a plaintiff must prove that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and [taking] reasonable measures to guarantee the safety of the inmates." *Farmer,* 511 U.S. at 832. To withstand summary judgment on a challenge to prison conditions, Plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions, or a substantial risk of such injury. *Strickler v. Waters,* 989 F.2d 1375, 1381 (4th Cir. 1993). Plaintiff has alleged no such injury and the Court therefore grants summary judgment as to any conditions of confinement claim related to his time in Supermax.

11

To the extent that Plaintiff asserts a First Amendment retaliation claim, Defendants have submitted evidence that Plaintiff was found guilty by a disciplinary hearing officer for misconduct (Dkt. No. 29-1 at 17). Defendants have also submitted multiple incident reports and the results of a second disciplinary hearing showing that Plaintiff threatened Defendant Scott and that his transfer to Supermax was a result of his misconduct. Plaintiff has submitted no evidence that would go to show that Defendants were motivated by retaliatory purposes in transferring him to the Supermax cell. Claims based on a retaliation theory of inmate discipline require some showing beyond the discipline itself, since "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." *Moore v. Bennet*, 777 F. Supp.2d 969, 983 (E.D.N.C. March 23, 2011) (quoting *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). Here, the Court can discern no genuine issue of material fact and therefore grants summary judgment to Defendants as to the First Amendment claim.

## Conclusion

For the reasons set forth above, the Court declines to adopt the R&R of the Magistrate Judge, DENIES Defendants' Motion for Summary Judgment (Dkt. No. 29) as to the excessive force claim, and GRANTS Defendants' motion as to the conditions of confinement/First Amendment claim. The Court will appoint counsel by separate order.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

September ___1___, 2015
Charleston, South Carolina